FANNY EATON *vs.* BOSTON AND LOWELL RAILROAD COMPANY

It is no defence to an action by a passenger against a carrier to recover damages for an in-
jury sustained through their negligence, that the negligence or trespass of a third party
contributed to the injury, although such third party acted entirely independently of the
carrier.

The above rule is not affected by *St.* 1851, *c.* 128, authorizing certain railroad companies,
of which the defendants were one, to use a common track, and regulating the manner of
such use and their liability for accidents upon the same.

TORT to recover damages for a personal injury sustained by the plaintiff, while a passenger in a car of the defendants.

At the trial in this court, before *Dewey,* J., the following facts appeared : The injury was received on a portion of the Essex Railroad used in common by the defendants and the Eastern Railroad, under the authority of *St.* 1851, *c.* 128, the material portions of which are referred to in the opinion. The wheels of a wagon loaded with hay, which the driver was attempting to take from the highway along the railroad track to certain private premises, were caught between the rails and the planking, outside of the limits of the highway, and there held fast; and while in this position, the defendants' train, in which the plaintiff was a passenger, came from South Danvers towards Salem, around a curve, and was stopped just as it reached the load of hay. The train run by the Eastern Railroad Company from Lawrence to Salem was almost due. The defendants sent a flagman to stop that train, and were endeavoring to remove the load of hay, when that train came rapidly round the curve and ran into the defendants' train, thereby causing the injury to the plaintiff.

The defendants offered evidence tending to show that the train of the Eastern Railroad Company might have been stopped soon enough to avoid the collision, after the flagman was sent back, and might have been seen by the engineer of that train, and that the conductor of that train, knowing the time when the defendants' train left South Danvers, did not delay his train for the time fixed by the time-tables before starting, but started too soon and an at too great speed, and that the collision was caused by

the carelessness of said engineer and conductor. They also contended that the driver of the team attached to the wagon was where he had no right to be, and was careless in allowing the wheels of the wagon to become caught as they were.

The defendants asked the following instructions:

" 1. If the stopping of the load of hay, over which the defendants had no control, on the track of the railway contributed to the happening of the accident by which the plaintiff was injured, then the defendants are not liable, although their own negligence may have also contributed to it.

" 2. If the injury to the plaintiff was occasioned by negligence on the part of another railroad corporation, having the right to use the same track with the defendants, and by the negligence of the defendants, then the defendants are not liable.

" 3. The defendants were not bound to attempt to remove the passengers from their cars, under the circumstances of this case.

" 4. If the injury to the plaintiff was occasioned by the negligence of some person over whom the defendants had no control, in driving a load of hay on the track, and the negligence of the defendants in not sending back a messenger soon enough to stop an approaching train belonging to another corporation, having the right to use the same track, then the defendants are not liable.

" 5. If the train of the defendants was stopped by a load of hay on the track, over which they had no control, and if, while the train was standing on the track, waiting for the removal of the hay, and while the defendants' servants were attempting to remove it, the train was run into by the train of another company having the right to use the same track, then the defendants are not liable for the injury to the plaintiff, although they might have sent back some one to stop the approaching train sooner than they actually did do it, if, by sending back such person as soon as it could be done, the collision of the trains ould not have been prevented."

The fifth of the defendants' prayers for instruction was adopted by the judge, and the jury instructed in accordance therewith.

As to the others, the jury were instructed as follows:

" That the fact that the obstruction to the track was caused by the driving of a load of hay upon the same, and the same being there by accident or negligence, does not relieve the defendants from liability, if they were guilty of negligence as to the duty required of them to see that effectual measures were taken to prevent the approaching train from running into the Lowell train thus delayed by the obstruction.

" That it would be the duty of the defendants, if running under an arrangement by which the Lawrence and Salem cars were to follow them on the same track, in such short period of time as would endanger the safety of the passengers on the Lowell train, to provide and use the necessary means to guard against injury to their passengers by reason of such running by the Lawrence and Salem cars, in case of any stoppage of the defendants' train by reason of an obstruction upon the road rendering the same impassable by the defendants' train.

" In making such provision, proper consideration should be given to the customary mode of running trains, and the ordinary variance from the time-table, in the time of their actual arrival at given points.

" In reference to the duty of the defendants, upon meeting an obstruction to the progress of their train, to give notice to their passengers of the expediency of their leaving the cars to avoid the impending danger from the approach of the Salem and Lawrence cars, the jury will judge; and if they find that no other effectual means could then be used to avoid the injury that would arise from their exposure to be run into by the Lawrence and Salem cars, and that this would have been effectual, and might have been done, giving the passengers sufficient time to leave the cars, it will be for the jury to say whether the omission so to do was a neglect of duty on the part of the defendants, for the consequences of which they are responsible — the jury taking into consideration the actual state of the cars and the opportunities that existed for the removal of the passengers from them."

The jury were further instructed that any arrangement

consented to and sanctioned by the defendants, by which these two trains of cars were run upon the same track, and the Lawrence and Salem train was to follow the defendants' train in so short a period that there could be in ordinary cases no adequate provision to give notice to the Lawrence and Salem cars of an obstacle on the track, so as to enable them effectually to check their engine and prevent a collision with the cars of the defendants' train, and avoid endangering the lives and persons of the passengers, would be a neglect of duty and make them responsible to the passengers, if injured by the Salem and Lawrence train running into and upon that of the defendants, for want of notice of the detention of the defendants' train by an obstacle obstructing the railroad track.

The jury were also instructed that if the injury to the plaintiff was caused by the improper acts of the Eastern Railroad Company solely, or through their negligence in the management of their train, and by acts in which the defendants did not participate, and over which they had no control, the Eastern Railroad Company are the proper parties to be held responsible for the injury to the plaintiff, and the defendants would not be responsible for the same ; and that if the defendants, by their own negligence while conveying the plaintiff in their cars, caused or permitted the injury to happen to the plaintiff, the fact that the Eastern Railroad Company, running the Lawrence and Salem cars, had also been guilty of negligence in running their cars, which contributed to the injury, would not prevent the defendants from being charged in this action for the injury to the plaintiff.

The jury returned a verdict for the plaintiff, with $1100 damages; and the case was reported for the determination of the whole court.

*J. G. Abbott & B. Dean*, for the defendants. 1. Under the instructions, the jury may have been of opinion that, if the Eastern Railroad Company's servants had not been guilty of negligence, they might have stopped their train in time to avoid a collision. The first question therefore is, if a railroad train is stopped on the track without the fault of its managers, and such

precautions are used that an approaching train of another corpo-ration need not, except through negligence, run into it, but such approaching train by negligence does run into it, whether the corporation running the first train are liable for the damages that follow. This view of the case is not altered by any of the instructions given at the trial. The defendants contend that under these circumstances they are not liable. 2. Under *St.* 1851, *c.* 128, § 6, the remedy must be sought against the two corporations jointly, by whose joint act, neglect or default the injury was occasioned, or against all three corporations jointly using the road ; or the act, neglect or default must belong solely to the company sought to be charged. See *Davis* v. *Dudley*, 4 Allen, 557 ; *Wright* v. *Malden & Melrose Railroad*, Ib. 283 ; *Holly* v. *Boston Gas Light Co.* 8 Gray, 132 ; *Rowell* v. *Lowell*, 7 Gray, 100 ; *Kidder* v. *Dunstable*, Ib. 104 ; *Murdock* v. *Warwick*, 4 Gray, 178 ; *Marble* v. *Worcester*, Ib. 395. 3. The *St.* of 1851 provided the tribunal for the settlement of the arrangements for the joint management of said railroad, and the defendants are not responsible for damages resulting to third persons because of any want of safety in the management fixed upon.

*J. C. Perkins & W. C. Endicott*, for the plaintiff, besides some of the cases cited in the opinion, cited *Peck* v. *Neil*, 3 McLean, 22 ; *Talmadge* v. *Zanesville, &c. Road Co.* 11 Ohio, 197, 218 ; *Lockhart* v. *Lichtenthaler*, 46 Penn. State. R. 151 ; *Laing* v. *Colder*, 8 Penn. State R. 479, 483 ; *Simpson* v. *Hand*, 6 Whart. 311, 322 ; *Stokes* v. *Saltonstall*, 13 Pet. 181 ; *Thorogood* v. *Bryan*, 8 C. B. 115 ; *Derwort* v. *Loomer*, 21 Conn. 245, 254, 255 ; *Dudley* v. *Smith*, 1 Camp. 167.

COLT, J. At the time of the injury complained of, the relation of passenger and carrier existed by contract between the plaintiff and the defendants ; they had received the plaintiff upon their cars, and were bound to the exercise of all that care and caution which the relation imposes. The degree of care required is measured by the extent of the peril to human life and limb which would be occasioned by neglect; and was therefore the highest which may reasonably be exercised in order to prevent those injuries which human foresight could avert. The

plaintiff has the right to look to the defendants in the first instance for the discharge of this obligation assumed. And it is no answer to an action by a passenger against a carrier, that the negligence or trespass of a third party contributed to the injury. These propositions would be more manifest if this action had been brought in form upon the implied undertaking of the defendants; but the plaintiff may elect to sue in tort or contract, and the rule of duty is the same in either form of action. *Warren* v. *Fitchburg Railroad,* 8 Allen, 227. *Ingall* v *Bills,* 9 Met. 1. *McElroy* v. *Nashua & Lowell Railroad,* 4 Cush. 400. *Sullivan* v. *Philadelphia, &c. Railroad,* 30 Penn. State R. 234.

Even if no privity of contract existed, and the injury was the result of the joint act of the defendants, the owner of the load of hay and the Eastern Railroad Company, it would furnish no defence to this action ; for, in actions of this description, non-joinder of defendants cannot be availed of in bar. And this is true although the party contributing by his negligence was acting without concert with and entirely independently of the defendants. *Illidge* v. *Goodwin,* 5 C. & P. 190. The cases cited by the defendants, in opposition to these propositions, against towns for injuries occasioned by defects in highways are reconciled by the consideration that this liability of towns is wholly statutory ; and, by the construction given to the statute, no action can be maintained unless the injury arises wholly from the defect. *Rowell* v. *Lowell,* 7 Gray, 100. *Kidder* v. *Dunstable,* Ib. 104. *Richards* v. *Enfield,* 13 Gray, 346. *Moore* v. *Abbot,* 32 Maine, 46.

The first, second and fourth prayers for instructions, exonerating the defendants if the negligence of other parties contributed to the injury, were therefore properly refused, unless the case is taken out of the scope of these principles by the provisions of *St.* 1851, *c.* 128, upon which the defendants rely. By this statute, certain railroad corporations, including the defendants and the Eastern Railroad Company, were authorized to enter upon and use a portion of the Essex Railroad in common. Numerous provisions are therein made regulating the manner of the use and the compensation to be paid. A superintendent

is to be appointed by the companies, and the directors of all the corporations are to make such arrangements as are necessary for the joint management and repair of the road; and in case of disagreement, each of said companies is empowered to apply to the county commissioners, who shall act as arbitrators on all points of difference between them. By section 6 it is provided that " in case of any accident occurring upon that part of the Essex Railroad," " that company shall be held liable for the same by whose act, neglect or default it was occasioned; and if it shall occur in consequence of any defect in the road, the damage shall be borne by the three companies respectively, in the same proportion in which they are required to pay for repairs of the road."

It is contended that, as these provisions establish a tribunal, consisting of the directors of all the roads, for the settlement of the arrangements for the joint management, the defendants are not liable in any form for injuries to third persons from any want of safety in the management fixed upon. But the defendants cannot escape liability for injuries occasioned by arrangements with the other roads to which they assented, by which the safety of passengers was endangered. It was not the purpose of the statute to establish a tribunal to settle these arrangements, whose adjudications should be conclusive upon all persons upon the question of their propriety. The instructions of the presiding judge upon this point were carefully given, and were in no respect erroneous. All the provisions of this statute, including § 6, were intended, we think, to regulate the use of the road and define the liability of these corporations among themselves for injuries happening on the road so used in common. As to strangers and other parties not in privity of contract, the liability of each stands upon common law principles.

The third instruction asked for was fully covered by the instructions given. It was wholly for the jury under all the circumstances to say whether due care required the defendants' servants to remove the passengers from the car, and it was so left to them.

All the instructions not given were rightly refused, and those which were given were sufficiently favorable to the defendants.

*Judgment on the verdict.*